IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HANKIN FAMILY PARTNERSHIP, et al., :
                                    :    CIVIL ACTION
                    Plaintiffs,     :
                                    :    NO. 01-1622
              v.                    :
                                    :
UPPER MERION TOWNSHIP, et al.,      :
                                    :
                    Defendants.     :

**OPINION**

**Slomsky, J.**                                    **January 5, 2012**

TABLE OF CONTENTS

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    SUMMARY OF FACTS AND PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . 2
       A.    Relevant Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
             1.    Joint Prosecution Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
             2.    Realen and Township Defendants' Settlement Negotiations. . . . . . . . . . 5
             3.    Relevant State Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
                   a.    The Spot Zoning Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
                   b.    The Inverse Condemnation Action . . . . . . . . . . . . . . . . . . . . . 9
                   c.    The Declaratory Judgment Action . . . . . . . . . . . . . . . . . . . . . 10
                   d.    The Rescission Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
       B.    The Instant Federal Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
             1.    Township Defendants' Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . 13
             2.    Plaintiffs' Motion for Partial Summary Judgment . . . . . . . . . . . . . . . . . 14
             3.    Realen's Rule 41(a) Motion to Voluntarily Dismiss . . . . . . . . . . . . . . . 15
             4.    April and May 2010 Acts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
             5.    Motion to Supplement Amended Complaint . . . . . . . . . . . . . . . . . . . . . 16

III.   STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
       A.    Leave To File A Supplemental Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
       B.    Leave To File A Cross-Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.    DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
       A.    Leave To File Supplemental Pleading . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
             1.    Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

i

2.     Civil Rights Conspiracy in Count VII and Civil Conspiracy Under Pennsylvania Law in Count IX are Futile . . . . . . . . . . . . . . . . . . . . . . . . 27

    a.     Conspiracy Claims Against Realen . . . . . . . . . . . . . . . . . . . . . . . 27

         i.     Civil Conspiracy Under Pennsylvania Law Against Realen. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

         ii.    Civil Rights Conspiracy Against Realen . . . . . . . . . . . . 32

    b.     Conspiracy Claims Against Township Defendants . . . . . . . . . . . 34

         i.     Civil Conspiracy Under Pennsylvania Law Against Township Defendants . . . . . . . . . . . . . . . . . . . . . . . . . 34

         ii.    Civil Rights Conspiracy Against Township Defendants . 35

3.     Conspiracy to Intimidate Witnesses in Count VIII is Futile . . . . . . . . . . . 36

    a.     Witness Intimidation Claim Against Realen . . . . . . . . . . . . . . . . 37

    b.     Witness Intimidation Claim Against Township Defendants . . . . . 39

4.     First Amendment Retaliation Claim in Count X is Futile . . . . . . . . . . . 40

5.     Undue Delay, Bad Faith, or Dilatory Motive . . . . . . . . . . . . . . . . . . . . . . 42

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

I.    **INTRODUCTION**

This case involves a civil rights action brought by two plaintiffs:  (1) Plaintiff Thomas J. Timoney, Esquire, as Receiver for the Hankin Family Partnership ("Plaintiff Timoney")[1] and (2) Plaintiff Realen Valley Forge Greenes Associates ("Realen").  The named defendants are Upper Merion Township, the Board of Supervisors of Upper Merion Township, and the Upper Merion Township Zoning Hearing Board (together "Township Defendants").  The Complaint was originally filed on April 3, 2001 (Doc. No. 1), and was amended on May 17, 2001 (Doc. No. 7).[2]

Before the Court is Plaintiff Timoney's Motion for Leave to Supplement the First Amended Complaint.  (Doc. No. 115.)  He seeks to add four new claims against Township Defendants, and also to bring the same four claims against the second plaintiff in this litigation, Realen.  If the supplement is allowed, Plaintiff Realen would become a cross-claim defendant in this litigation.  To support the request to file a supplemental pleading, Plaintiff Timoney asserts a change in circumstances since the First Amended Complaint was filed on May 17, 2001 (the "Amended Complaint").  The change involves an alleged conspiracy among Realen, the law firm of Kaplin Stewart Meloff Reiter & Stein, P.C. ("Kaplin"), which is Plaintiff Timoney and

---

[1]  In the Complaint filed on April 3, 2001 (Doc. No. 1), the Hankin Family Partnership was named as Plaintiff.  On May 17, 2001, an Amended Complaint was filed in which the Hankin Family Partnership was terminated as a plaintiff and replaced by the Receiver for the Hankin Family Partnership, Thomas J. Timoney, Esquire.  (Doc. No. 7.)  In January 2011, Mr. Timoney passed away.  The Montgomery County Court of Common Pleas appointed Herman J. Weinrich, Esquire, as his replacement.  For purposes of continuity throughout this Opinion, the Plaintiff shall be referred to as Plaintiff Timoney.  This reference encompasses Receiver Weinrich.

[2]  On September 25, 2008, in anticipation of former Chief Judge James Giles's retirement, the matter was reassigned to Judge Petrese B. Tucker.  On October 17, 2008, the case was reassigned from Judge Tucker to this Court.

1

Realen's former counsel in this litigation, and Township Defendants.  Plaintiff Timoney alleges

that Realen, Kaplin, and Township Defendants engaged in a conspiracy to prevent Plaintiff

Timoney and the Hankin Family Partnership ("Hankin") from obtaining the fair market value of

certain property in which the Hankins have an interest.  Because the Court finds that each of the

proposed new claims fails on the ground of futility, the Court will deny Plaintiff Timoney's

Motion.

## II.     SUMMARY OF FACTS AND PROCEDURAL HISTORY

### A.     Relevant Background

This lawsuit stems from a land dispute spanning seven decades and multiple layers of

litigation in both state and federal court.[3]  The dispute is over a 135-acre plot of land located in

Upper Merion Township (the "Property").  As far back as the 1940s, the land was owned by the

Hankin Family.  In 1953, it was zoned for agricultural use.  The approved use of the land under

the "agricultural" rubric was for open space or a golf course.  For years, Hankin and potential

purchasers challenged the agricultural use zoning designation and sought to have the land

rezoned for commercial use.  In 1996, Realen became involved with the Property by entering into

a Purchase Agreement with Hankin and agreeing to buy the Property contingent upon Realen

obtaining the right to develop the Property commercially, either through rezoning or through a

successful challenge to the validity of the agricultural zoning designation.  The Agreement was

amended in October 1997, and once again on May 8, 2003 (the "2003 Purchase Agreement").

_____

[3] Given the vintage of this dispute, the factual background of this matter has been
recounted by several state and federal adjudicatory bodies that have presided over the litigation
involving the parties over the years.  Because the parties are well-acquainted with the case, this
Court will recount only the relevant facts and procedural history.

(Doc. No. 120, Appendix ("App.") Tab 2.)

The 2003 Purchase Agreement set the sale price of the Property at $25 million plus financing costs.  It also included an additional purchase price provision whereby Plaintiff Timoney would receive additional payment from Realen based on future profits if the Property were rezoned for commercial use (the "Additional Purchase Price").  The 2003 Purchase Agreement required Realen to challenge the Township's agricultural zoning designation before the Board of Supervisors or Zoning Hearing Board ("ZHB"), and to appeal any adverse decision to the Montgomery County Court of Common Pleas.  (Id. ¶ D(1).)

Before and after Realen closed on the Property, Plaintiff Timoney, Realen, and Township Defendants were embroiled in litigation to establish the proper use and value of the Property. The multiple litigations are explained in more detail below.  At this point, it is pertinent to know that in 1997 Realen challenged the agricultural use zoning designation before the ZHB, and, in 2001, appealed the ZHB's adverse decision to the Montgomery County Court of Common Pleas.[4] Also in 2001, Plaintiff Timoney filed a claim in Montgomery County Court of Common Pleas alleging that zoning restrictions on the Property amounted to an unconstitutional taking without just compensation.  The same claim is made in the instant litigation.  (See Doc. No. 7, Counts V and VI.)

As noted above, in 2001, Plaintiffs Timoney and Realen filed the instant action in federal court.  Several years later, on June 24, 2004, Realen and Plaintiff Timoney closed on the sale of the Property.  (Doc. No. 115 at 2.)  Thereafter, the relationship between Plaintiff Timoney and

---

[4]  The Honorable Calvin S. Drayer Jr. presided over the case.  Judge Drayer would also preside over the additional cases filed in the Montgomery County Court of Common Pleas as explained *infra*.

Realen became strained.  In 2005, Realen filed a claim in the Montgomery County Court of

Common Pleas seeking a declaratory judgment that it could unilaterally dismiss this federal

litigation and the state case involving the unconstitutional taking without just compensation

without first obtaining the approval of Plaintiff Timoney.  (Doc. No. 118 at 8.)  By 2007, the

acrimony between Plaintiff Timoney and Realen reached the point where Plaintiff Timoney filed

a rescission action in the Montgomery County Court of Common Pleas seeking to overturn the

2003 Purchase Agreement, to regain control of the Property, and to rescind a Joint Prosecution

Agreement between Plaintiff Timoney and Realen which allowed the Kaplin law firm to bring

the instant suit in federal court and other suits in state court jointly on their behalf and

individually on behalf of Realen.  (Doc. No. 118 at 9.)

    At the June 24, 2004 closing on the Property, Realen received title to the land and Hankin

received payment of $27,046,106.56, which included finance costs added to the $25 million

purchase price.  (Doc. No. 120 at 4; Id., App. Tab 5 ¶ 54.)  No Additional Purchase Price was

paid.  A dispute over Realen's failure to pay the Additional Purchase Price and the meaning of

the Additional Purchase Price provision in the 2003 Purchase Agreement led to years of

litigation, including the new claims being asserted in the instant federal action by Plaintiff

Timoney.

      1.     Joint Prosecution Agreement

    On May 17, 2001, Plaintiffs Timoney and Realen filed the Amended Complaint in this

case against Township Defendants alleging denials of equal protection, substantive due process,

procedural due process, and a taking without just compensation, all relating to the Board of

Supervisors' opposition to rezoning the Property for commercial use and the denial of a validity

challenge by the ZHB.  (Doc. No. 7.)  Prior to filing the original Complaint, Hankin and Realen

entered into a contract on January 23, 2001 to confirm their mutual interest and agreement in all

future litigation (the "Joint Prosecution Agreement").  (See Doc. No. 120, App. Tab 1.)  Kaplin

was retained as counsel for both Plaintiffs Timoney and Realen.  Included in the Joint

Prosecution Agreement is a conflict of interest waiver granting unilateral settlement power to

Realen under certain circumstances.  (Doc. No. 120 at 4; Id., App. Tab 1 ¶ 7F.)  The Joint

Prosecution Agreement states, in pertinent part:

> Realen shall have the authority to cause Kaplin to settle either or both of the
> Additional Actions on behalf of Hankin and the consent of Hankin and/or Timoney
> shall not be required; but only if any such settlement shall entitle Realen to develop
> the Property for the Permitted Uses (as defined in Paragraph 5A(a) of the Amended
> Purchase Agreement).  Realen shall not have the right to cause the settlement of the
> Additional Actions in a manner that would not permit the development of the
> Property for the Permitted Uses.

(Id., App. Tab 1 ¶ 7F.)  Paragraph 5A(a) of the Amended Purchase Agreement defines "Permitted

Uses" as either Plan A[5] or Plan B[6] or "such other combination of uses as is satisfactory to the

Purchaser."  (Doc. No. 120, App. Tab 2 ¶ 5A(a)(i)-(iii).)

> 2.    Realen and Township Defendants' Settlement Negotiations

On October 28, 2004, Kaplin sent to Plaintiff Timoney a letter stating that the Township

was willing to discuss settlement and that Realen believed it would be appropriate to stay the

federal case pending settlement negotiations.  (Doc. No. 120 at 5.)  The letter provided that it was

Kaplin's position that pursuant to Section 7 of the Joint Prosecution Agreement, Realen had

authority to unilaterally stay the instant litigation and to pursue settlement discussions with

---

[5]  Plan A provides for a retail, hotel, and apartment complex development.

[6]  Plan B provides for a retail, hotel, and office building development.

Township Defendants.  (Doc. No. 120, App. Tab 13 at 8978a.)  The docket in the federal

litigation reflects that, after the date of this letter, no party filed any challenge to Realen's

authority to unilaterally seek a stay of the proceeding.  On December 17, 2004, Judge Giles

entered a stay of the case pending settlement negotiations between the parties.  (Doc. No. 50.)

No entries appear on the federal docket until almost a year later when, on October 5, 2005,

current counsel for Plaintiff Timoney entered their appearance.  (Doc. No. 51.)

On May 25, 2005, Realen (represented by Kaplin), together with Township Defendants,

filed a Joint Motion and Proposed Settlement Agreement in the Montgomery County Court of

Common Pleas, attaching a settlement proposal and seeking permission to dismiss a related

inverse condemnation action pending in that court (see section II.A.3.b *infra*) and the instant

federal action, if the Settlement Agreement was finalized.  (Doc. No. 125, Exhibit ("Ex.") J.)

Plaintiff Timoney was not named as a party in this state action and was not served with a copy of

the joint motion.  (Doc. No. 115, Ex. A ¶ 48.)  Plaintiff Timoney was informed of the Proposed

Settlement Agreement on September 29, 2005.  (Id., Ex. A ¶ 49.)

On April 20, 2006, Realen and Township Defendants entered into a settlement

agreement.  (Doc. No. 120 at 6.)  The agreement required Realen to cause the dismissal of the

instant federal action as well as the pending state court inverse condemnation action.  In

exchange, Township Defendants would approve Realen's proposed "Plan C," which allowed for

nonagricultural development of the Property.  Realen would also release all claims that "could

have been asserted against [the Township] in [the instant federal action] . . . even if it is

determined that Realen may not dismiss the claims of Timoney and Hankin in [the instant federal

6

action]."[7]  (Doc. No. 115, Ex. A ¶¶ 51-54.)

3.     Relevant State Court Proceedings

a.     The Spot Zoning Action

As noted above, the first Purchase Agreement required Realen to obtain the right to

develop the Property for commercial purposes, either through rezoning or through a successful

challenge to the validity of the agricultural zoning designation.  (Doc. No. 7 ¶ 46.)  After entering

into the first Purchase Agreement, Realen informally investigated the possibility of petitioning

the Board of Supervisors to change the zoning designation.  (Id. ¶ 47.)  The Supervisors told

Realen that, in order to obtain rezoning of the Property, it would have to garner support of the

local community groups that had opposed development of the Property in the past.  (Id. ¶ 48.)

Realen could not get community support and determined that pursuing rezoning would be

fruitless.  (Id.)

In October of 1997, the Board of Supervisors offered to purchase the Property for

$4,800,000, which was based on the fair market value of the Property zoned for agricultural use

as determined by the Montgomery County Board of Assessment.  (Doc. No. 7 ¶ 50.)

Comparatively, all of the privately-owned properties immediately adjacent to the Property were

---

[7]  The Montgomery County Court of Common Pleas, in the "Declaratory Judgment
Action" action noted above and described in section II.A.3.c *infra*, concluded that dismissal of
the actions was a condition of the Township's approval of development Plan C, but not all phases
of this plan were in conformity with the predefined Permitted Uses, or Plans A or B.  Realen
therefore did not have the right to unilaterally settle and seek dismissal of the inverse
condemnation action pending in the Montgomery County Court of Common Pleas or the instant
case.  (Doc. No. 120, App. Tab 11 at 24-26.)  Realen appealed this adverse decision and on
January 21, 2011, the Superior Court affirmed the decision of the Court of Common Pleas.  On
April 27, 2011 Realen filed a petition for allocatur in the Pennsylvania Supreme Court seeking to
overturn this decision.  This petition was denied on September 20, 2011.

at the time zoned for commercial use with a fair market value ranging from approximately 3 to 22 times per acre more than the Property's value.  (Id. ¶ 52.)

The realization that pursuing rezoning would be futile, coupled with the offer by the Board of Supervisors to purchase the Property at a depressed value, left Realen with the only other option under the first Purchase Agreement — to bring a validity challenge before the ZHB to the agricultural zoning designation.  (Id. ¶ 55.)  On November 13, 1997 Realen filed a challenge with the ZHB to the validity of zoning the Property for agricultural use.[8]  Realen alleged, among other things, that Township Defendants' refusal to permit the Property to be rezoned for commercial use similar to surrounding properties constituted unlawful spot zoning.[9] See Hankin Family P'ship v. Upper Merion Township, No. 01-1622, 2002 WL 461794, at *3-4 (E.D. Pa. Mar. 22, 2002).  On August 13, 1999, after 14 days of hearings from February 1998 through June 1999, the ZHB denied Realen's validity challenge.  (Doc. No. 149, Ex. D.)  The ZHB concluded that the current zoning of the subject property for agricultural use permitted various uses, and there was sufficient evidence to justify zoning the subject property differently from the zoning of the surrounding properties.  The ZHB held that the zoning of the Property was "not 'spot zoning,' arbitrary or irrational, nor enacting special legislation."  (Doc. No. 149, Ex. D

---

[8]  Hankin was not a party to this challenge, although it was the legal owner of the Property at the time.  Realen prosecuted the challenge in its capacity as an equitable owner.

[9]  The Pennsylvania Supreme Court defines spot zoning "as a singling out of one lot or small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment."  In re Realen Valley Forge Greenes Assocs., 838 A.2d 718, 729 (Pa. 2003). Eventually, the Pennsylvania Supreme Court found that the ZHB engaged in "reverse" spot zoning, because it was the land surrounding the Property that was rezoned, rather than the land in question, which in a typical zoning case would receive disparate rezoning.  Id. at 731.

8

at 49.)

Realen appealed this decision to the Montgomery County Court of Common Pleas (the "Spot Zoning Action").  By an order dated December 1, 2000, the court affirmed the ZHB and issued an explanatory opinion on April 12, 2001.  (Doc. No. 149, Ex. I.)  On June 4, 2002, the Commonwealth Court of Pennsylvania affirmed the order of the Court of Common Pleas.  (Doc. No. 149, Ex. J.)

 On December 18, 2003, the Pennsylvania Supreme Court reversed, holding that Township Defendants did engage in reverse spot zoning.  In re Realen Valley Forge Greenes Assocs., 838 A.2d 718, 721 (Pa. 2003).  The Pennsylvania Supreme Court found that the ZHB's refusal to permit commercial structures on the Property was arbitrary, an abuse of its inherent police power, and constituted unlawful "reverse spot zoning."  Id. at 730.  The court remanded the case to the Court of Common Pleas to determine how Realen could be afforded "definitive relief," as required by 53 Pa. Stat. Ann. § 11006-A(c)-(e) and Casey v. Zoning Hearing Board of Warwick Twp., 328 A.2d 464, 469 (Pa. 1974).  In re Realen Valley Forge Greenes Assocs., 838 A.2d at 732.  The court also ruled that Realen could proceed with either Plan A or B.  Id. at 726.

b.      The Inverse Condemnation Action

On March 30, 2001, Realen and Plaintiff Timoney filed an inverse condemnation action in the Montgomery County Court of Common Pleas against Township Defendants, seeking compensation under 26 Pa. Cons. Stat. § 502(c)(3) for a de facto taking of the Property (the "Inverse Condemnation Action").  Hankin Family P'ship, 2002 WL 461794, at *10.  Township Defendants filed preliminary objections to this lawsuit, which were denied on November 27, 2001.  On December 17, 2004, the Court of Common Pleas entered an order staying the inverse

condemnation action pending settlement negotiations.  (Doc. No. 120 at 5.)  This stay has never been lifted.

c.     The Declaratory Judgment Action

On March 18, 2005, Realen and Kaplin filed another action in Montgomery County Court of Common Pleas (the "Declaratory Judgment Action"), seeking a declaration that Realen was not required to pay the Additional Purchase Price to Plaintiff Timoney and that Realen had authority to unilaterally dismiss Plaintiff Timoney's claims against the Township Defendants in the instant federal action.  (See Doc. No. 115, Ex. A ¶ 44; Doc. No. 120 at 6.)

In response, on October 3, 2005, Plaintiff Timoney terminated Kaplin as his counsel in the instant litigation against Township Defendants and hired new counsel.  (Doc. No. 115, Ex. A ¶ 50.)  Kaplin refused to withdraw as counsel until April 5, 2010, and also refused to change the complaint in the Declaratory Judgment Action, which was adverse to the interest of Plaintiff Timoney.

Timoney filed an answer in the Declaratory Judgment Action three years later, on April 28, 2008.  The answer was filed on the heels of Judge Drayer's opinion in the parallel action for rescission in which Plaintiff Timoney sought to rescind the Purchase and Joint Prosecution Agreements (see section II.A.3.d infra).  In the answer, Plaintiff Timoney asserted several counterclaims.  He sought a favorable interpretation of the 2003 Purchase Agreement or, in the alternative, a rescission of the 2003 Purchase Agreement, preservation of Realen's obligation to pay the Additional Purchase Price, compensatory damages, punitive damages, and costs.  (Doc. No. 120, App. Tab 6 at 35-36.)

On June 4, 2008, Plaintiff Timoney filed a third-party complaint in the Declaratory

10

Judgment Action, seeking to add six individual partners of Realen as third-party defendants, and requesting the same relief against them as sought in the counterclaim.[10]   (Doc. No. 120, App. Tab 7.)   On September 18, 2008, Judge Drayer dismissed the counterclaim and addressed the sufficiency of the allegations:

> The [Third-Party Complaint] and Counterclaim does not attempt to set forth an actionable claim.   The [Third-Party Complaint] and Counterclaim spews forth one averment after another after another.   There is no attempt to frame a cause of action or a single count; instead, after all the allegations are set forth, Defendant . . . proceeds to request certain relief.   Even if this Court could decipher the [Third-Party Complaint] and Counterclaim as attempting to state specific actionable claims, those claims would be the same as those raised in the Rescission Complaint, which this Court previously found to be legally insufficient.

(Doc. No. 120, App. Tab 9 at 6.)

On December 22, 2009, after hearing six days of testimony, Judge Drayer issued an opinion and order regarding the original complaint in the Declaratory Judgment Action.   (Doc. No. 120, App. Tab 11.)   The court held that Plaintiff Timoney was not entitled to any compensation under the Additional Purchase Price provision, and was entitled only to the roughly $27 million it had received at the June 24, 2004 closing.   The court further held that Realen did not have the right to dismiss this federal civil rights action without Plaintiff Timoney's consent.   (Doc. No. 120, App. Tab 11 at 24.)

Plaintiff Timoney appealed Judge Drayer's ruling on the Additional Purchase Price.   Realen in turn appealed Judge Drayer's decision that it is not entitled to unilaterally dismiss the

---

[10]   In both the counterclaim and the third-party claim, the allegations against the defendants were not set forth clearly.   Judge Drayer noted that "the Third Party Complaint proceeds with one hundred and one allegations under a single count indistinguishably called 'Count I.'   The allegations reiterate, almost verbatim, the ones contained in the . . . Counterclaim filed . . . on April 28, 2008."   (Doc. No. 120, App. Tab 10 at 1.)

instant federal litigation.  As noted above, on January 21, 2011, the Superior Court of

Pennsylvania affirmed both decisions of Judge Drayer.  Realen filed an application for

reconsideration or reargument.  On March 28, 2001, the court denied the application.  On April

27, 2011, both Plaintiff Timoney and Realen filed petitions for allowance of appeal to the

Pennsylvania Supreme Court.  On September 20, 2011, the Pennsylvania Supreme Court denied

both petitions.

d.     The Rescission Action

On May 14, 2007, Plaintiff Timoney filed an action in the Montgomery County Court of

Common Pleas seeking to rescind the 2003 Purchase Agreement and Joint Prosecution

Agreement with Realen (the "Rescission Action").  The basis for rescission was alleged to be

fraud, breach of contract, breach of fiduciary duty, and civil conspiracy.  (Doc. No. 120, App.

Tab 5.)  On January 28, 2008, the court dismissed all claims with prejudice, except for the breach

of contract claim.  (Doc. No. 120, App. Tab 8.)  The court held that the tort claims were merely

contract claims in disguise and dismissed them pursuant to the gist of the action doctrine.  The

court stayed the breach of contract claim pending a decision in the Declaratory Judgment Action.

(Doc. No. 120 at 7; Id., App. Tab 8.)

On February 9, 2010, after resolution of the Declaratory Judgment Action, Judge Drayer

dismissed the breach of contract claim.  (Doc. No. 120, App. Tab 12.)  In March 2010, Plaintiff

Timoney appealed this ruling to the Superior Court of Pennsylvania.  On January 20, 2011, the

court affirmed Judge Drayer's ruling.  On February 22, 2011, Plaintiff Timoney filed a petition

for allowance of an appeal to the Supreme Court of Pennsylvania.  On September 20, 2011, the

Pennsylvania Supreme Court denied this petition.

12

In sum, as of the date of the issuance of this Opinion, all three petitions for allowance of appeal to the Supreme Court of Pennsylvania have been denied.

## B.   **The Instant Federal Case**

On April 3, 2001, while the Spot Zoning Action was still pending, Plaintiffs Timoney and Realen ("Plaintiffs") filed a Complaint in federal court against Township Defendants.  (Doc. No. 1.)  Former Chief Judge James Giles was assigned to the case.  On May 17, 2001, Plaintiffs filed an Amended Complaint.  (Doc. No. 7.)  The Amended Complaint contained six counts against Township Defendants, alleging violations of 42 U.S.C. § 1983 as follows:  (Count I) equal protection; (Counts II and III) substantive due process;[11] (Count IV) procedural due process; and (Counts V and VI) taking without just compensation.  (Doc. No. 7 ¶¶ 61-97.)

### 1.   Township Defendants' Motion to Dismiss

On June 8, 2001, Township Defendants filed a motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 10.)  On March 22, 2002, Judge Giles granted the motion on Count IV (procedural due process) and denied the

---

[11]  Count II refers to the decisions of the Board of Supervisors of Upper Merion Township and the ZHB to prevent development of the Property through agricultural zoning in order to depress its fair market value so that Upper Merion Township could acquire the Property at a lower cost.  Count III refers to the action of Upper Merion Township restricting use of the Property through agricultural zoning in order to prevent future development and to preserve it as a golf course or open space.  This Count also refers to the decisions of the ZHB rejecting the 1984 Acorn and 1997 Realen validity challenges in order to further the policy of the Township restricting development of the Property.  (See Doc. No. 7 at 15-17.)  As explained in this Court's separate Opinion deciding Defendants' Motion for Summary Judgment, prior to the sale of the Property to Realen, Hankin sold the Property to Acorn Development Corporation ("Acorn") in the 1980s.  (Doc. No. 164 at 7.)  A condition of the Acorn transaction was that the Property be rezoned by the Board of Supervisors.  (Id.)  The rezoning request was denied by the Board of Supervisors, and in 1984 Hankin and Acorn unsuccessfully litigated a validity challenge before the ZHB (the "1984 Acorn Challenge").  (Id.)

motion on all other counts.  (Doc. No. 17.)  See Hankin Family P'ship 2002 WL 461794, at *11.

Thereafter, on August 12, 2003, Judge Giles ordered that the case be placed on the suspense

docket.  On January 26, 2004, Judge Giles held a status hearing and ordered that the case remain

on the suspense docket pending a decision from the Supreme Court of Pennsylvania on the Spot

Zoning Action, and from the Court of Common Pleas on the Inverse Condemnation Action.  On

February 10, 2004, Judge Giles ordered that the case be reopened and that the Township

Defendants respond to the Amended Complaint.  (Doc. No. 32.)  On March 11, 2004, Township

Defendants filed an Answer.  (Doc. No. 35.)

                    2.      Plaintiffs' Motion for Partial Summary Judgment

        On July 6, 2004, Plaintiffs filed a motion for partial summary judgment.  (Doc. No. 40.)

Plaintiffs asserted that, under the theory of collateral estoppel and in light of the Pennsylvania

Supreme Court's decision in the Spot Zoning Action, the federal court was estopped from

denying relief on the equal protection claim (Count I).  On December 8, 2004, Judge Giles

denied the motion, holding that Plaintiffs failed to prove the existence of all elements of

collateral estoppel under Pennsylvania common law.  Timoney v. Upper Merion Twp., No.

01-1622, 2004 WL 2823227, at *1 (E.D. Pa. Dec. 8, 2004).

        Thereafter, this case was placed into and removed from the suspense docket on multiple

occasions.  (Doc. No. 87.)  Eventually, Judge Giles retired and while this matter was still on the

suspense docket, it was transferred to this Court for disposition.  On January 11, 2010, this Court

ordered the parties to show cause as to why the instant case should not be removed from the

suspense docket and placed on the trial docket.  (Doc. No. 90.)  On February 12, 2010, the order

to show cause was vacated, pending the outcome of ongoing state cases, and the matter remained

                                            14

in suspense.  (Doc. No. 92.)  On February 26, 2010, Plaintiff Timoney filed a motion to

reconsider and vacate the February 12, 2010 order, seeking to remove the matter from the

suspense docket.  (Doc. No. 93.)  This Court held a hearing on the motion and on March 25,

2010, granted Plaintiff Timoney's motion and placed the case back on the trial docket.  (Doc. No.

99.)

        3.        Realen's Rule 41(a) Motion to Voluntarily Dismiss

Prior to this case being transferred to this Court, Realen had filed on November 10, 2006,

a motion to voluntarily dismiss this litigation pursuant to Federal Rule of Civil Procedure 41(a).

(Doc. No. 72.)  Township Defendants joined in the motion.  Plaintiff Timoney filed a brief in

opposition.  (Doc. Nos. 81, 83-86.)  The Court refrained from deciding the motion pending the

outcome of the Declaratory Judgment Action in state court in which Judge Drayer was

considering whether Realen had authority to unilaterally dismiss the instant action.  (Doc. No.

87.)  As noted previously, on December 22, 2009 Judge Drayer held that Realen could not

unilaterally dismiss this case.  In light of that decision, on April 21, 2010 Realen withdrew the

pending motion without prejudice and reserved its right to apply for appropriate relief at a later

date.  (Doc. No. 107.)

        4.        April and May 2010 Acts

As stated, on April 21, 2010, Realen withdrew its November 10, 2006 motion to

voluntarily dismiss the claims against Township Defendants in this federal litigation.  On April

29, 2010, Realen stated, apparently in a disclosure made pursuant to Federal Rule of Civil

Procedure 26, that it was reserving its right to pursue indemnification or a separate cross-claim

and attorney's fees against Plaintiff Timoney.  (Doc. No. 115, Ex. A ¶ 73; Doc. No. 156 at 4.)

Thereafter, on May 25, 2010, Kaplin sent a letter on behalf of Realen to Plaintiff Timoney, with a copy to attorney John VanLuvanee as required by Paragraph 16(a)(ii) of the Joint Prosecution Agreement and Paragraph 15(a)(ii) of the 2003 Purchase Agreement (the "May 25, 2010 Letter").[12]  (Doc. No. 120, App. Tab 4).  The May 25 Letter provides, in relevant part:

> Please regard this letter as notice of significant action under paragraph 4 of the [Joint Prosecution Agreement] . . . . If you and Hankin insist on proceeding [in the federal action] and thereby cause or threaten loss of the ability to develop . . . the project, Realen will be required to commence suit against the Hankin Family Partnership and every person who has any legal or equitable interest . . . in the partnership or proceeds from its dissolution, for inter alia, breach of the [Joint Prosecution Agreement], restraint of further violations and to recover its monetary losses.

(Id.)

### 5.   Motion to Supplement Amended Complaint

On June 18, 2010, Plaintiff Timoney filed the instant Motion for Leave to File a Supplemental Complaint and Cross-Claim.  (Doc. No. 115.)  The proposed Supplemental Complaint contains four new claims against Township Defendants to be added to the Amended Complaint.  They are:  (Count VII) conspiracy in violation of 42 U.S.C. § 1983; (Count VIII) conspiracy in violation of 42 U.S.C. § 1985(2); (Count IX) civil conspiracy in violation of Pennsylvania common law; and (Count X) unlawful retaliation in violation of the First Amendment to the U.S. Constitution.  (Doc. No. 115, Ex. A ¶¶ 88-158.)  In addition to seeking leave to file these claims against Township Defendants, Timoney seeks to bring the same claims against Realen as cross-claims.  Township Defendants and Realen each oppose the Motion.  (See Doc. Nos. 117-118, 120, 128-129.)  The parties have extensively briefed the matter before the

---

[12]  According to the Joint Prosecution Agreement, John VanLuvanee was retained by Realen as co-counsel with Kaplin in the prosecution of Realen's zoning challenge in the Spot Zoning Action.  (Doc. No. 120, App. Tab 1 ¶ 2.)

Court and have submitted numerous exhibits in support of their respective positions.

On October 7, 2010, the Court heard oral argument on the instant Motion.  Following oral argument, at the request of the Court, the parties filed supplemental briefs primarily focusing on the "continuing violation" doctrine and its application, if any, to the First Amendment retaliation claim set forth in Count X of the proposed Supplemental Complaint.  (See Doc. Nos. 156-158.) The Motion is now ripe for disposition.

## III.   STANDARD OF REVIEW

### A.   <u>Leave To File A Supplemental Complaint</u>

Federal Rule of Civil Procedure 15(a)(2) provides:

> (a) **Amendments Before Trial**.
>                 * * *
> (2) ***Other Amendments***.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

Federal Rule of Civil Procedure 15(d) provides:

> **Supplemental Pleadings**. On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Rule 15(a) and (d) have different functions.  Rule 15(a) generally applies when a party seeks to amend a complaint to include facts that occurred prior to the filing of the initial complaint.  Rule 15(d) applies when a party seeks to file a supplemental pleading to include facts that occurred after the filing of the initial complaint.  <u>Owens-Illinois, Inc. v. Lake Shore Land Co.</u>, 610 F.2d 1185, 1188 (3d Cir. 1979).

17

Rule 15(a) expressly provides that leave to amend should be freely given by a court.  Rule 15(d) states instead that, "on just terms" a court "may" grant leave to supplement.  See Burns v. Exxon Corp., 158 F.3d 336, 343 (5th Cir. 1998).  The differences in the wording of Rule 15(a) and (d) are semantic only, and courts in the Third Circuit generally apply the Rule 15(a) standard to Rule 15(d) motions and liberally grant leave to supplement.  See CMR D.N. Corp. v. City of Philadelphia, No. 07-1045, 2011 U.S. Dist. LEXIS 25387, at *12 (E.D. Pa. Mar. 10, 2011); Tormasi v. Hayman, No. 09-2330, 2010 U.S. Dist. LEXIS 45922, at *5 (D.N.J. May 7, 2010); Medeva Pharma Ltd. v. Am. Home Prods. Corp., 201 F.R.D. 103, 104 (D. Del. 2001); Epstein v. Whitehall, No. 88-0534, 1989 U.S. Dist. LEXIS 7436, at *4 (E.D. Pa. June 29, 1989).  A district court has broad discretion to grant or deny a supplemental pleading.  CMR D.N. Corp., 2011 U.S. Dist. LEXIS 25387, at *11 (quoting Tormasi, 2010 U.S. Dist. LEXIS 45922, at *4).

The U.S. Supreme Court and the Third Circuit have held that "leave shall be freely given" to amend in appropriate circumstances.  In Foman v. Davis, the Supreme Court held that,

> In the absence of any apparent or declared reason–such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.–the leave sought should, as the rules require, be freely given.

371 U.S. 178, 182 (1967).  See also AT&T v. Marstan Indus. Inc., No. 93-2961, 1994 U.S. Dist. LEXIS 8294, at *3 (E.D. Pa. 1994).  In Bechtel v. Robinson, the Third Circuit noted that there is a "strong liberality . . . in allowing amendments under Rule 15(a)."  886 F.2d 644, 652 (3d Cir. 1989).

Thus, the standard in this Circuit is that leave to amend pursuant to Federal Rules of Civil Procedure 15(a) and (d) should be freely given unless the Court finds that the moving party acted

18

with (i) undue delay, (ii) bad faith, or (iii) dilatory motive; or (iv) the amendment is futile.

Further, in determining futility, a court should look to see if "the complaint, as amended, would fail to state a claim upon which relief could be granted.  In determining whether a claim would be futile, the district court applies the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6)."  Zahl v. N.J. Dep't of Law & Pub. Safety Div. of Consumer Affairs, Nos. 10-2022, 10-2516, 2011 U.S. App. LEXIS 10103, at *8-9 (3d Cir. May 18, 2011) (quoting Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010)). See also In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (holding that a proposed claim in an amended complaint was futile because it was time-barred under the statute of limitations, and appellant's other proposed claims would not survive a Rule 12(b)(6) motion due to lack of particularity).

### B.        Leave To File A Cross-Claim

Federal Rule of Civil Procedure 13(g) provides:

> A pleading may state as a cross-claim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The cross-claim may include a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

The policy behind allowing cross-claims is to "avoid multiple suits and to encourage the determination of the entire controversy among the parties before the court with a minimum of procedural steps." State Teachers Ret. Bd. v. Fluor Corp., 589 F. Supp. 1268, 1270 (S.D.N.Y. 1984) (internal quotations omitted).  The basis for determining the propriety of a cross-claim is the same as that used in determining a compulsory counterclaim, that is, whether the claim bears

a logical relationship to the original action.  See Metro Life Ins. Co. v. Kubicheck, 83 F. App'x

425, 430 (3d Cir. 2003) (quoting Transamerica Occidental Life Ins. Co. v. Aviation Office of

Am. Inc., 292 F.3d 384, 389-90 (3d Cir. 2002); Jefferson Standard Ins. Co. v. Craven, 365 F.

Supp. 861, 866-67 (E.D. Pa. 1973).  A cross-claim is logically related to the original claim and is

permissible when separate trials on each of the respective claims would involve a substantial

duplication of effort and time by the parties and the court.  Jefferson Standard Ins. Co. v. Craven,

365 F. Supp. 861 at 866-67.

## IV.    DISCUSSION

### A.    Leave To File Supplemental Pleading

  Plaintiff Timoney moves for permission to amend the already Amended Complaint (Doc.

No. 7) by filing the proposed Supplemental Complaint (Doc. No. 115, Ex. A), which would

include four new claims against Township Defendants and the same four claims as cross-claims

against Realen.[13]  For reasons that follow, the Court finds that the new claims sought against both

Realen and Township Defendants would be futile and therefore the Court will deny Plaintiff

Timoney's Motion.  Each claim will be discussed below, *seriatim*.

---

[13]  Plaintiff Timoney has moved to amend the Amended Complaint pursuant to Federal
Rule of Civil Procedure 15(a).  To do so, Plaintiff Timoney seeks to file a supplemental pleading,
which would allege claims and facts that arose after the First Amended Complaint was filed.  In
line with the discussion of the civil rules above, this Motion is more properly brought pursuant to
Federal Rule of Civil Procedure 15(d).  However, as stated, "'[t]he standard applicable to
motions to amend under [Rule 15(d)] is essentially the same standard that applies to [Rule
15(a)].'"  CMR D.N. Corp., 2011 U.S. Dist. LEXIS 25387, at *12 (quoting Masimo Corp. v.
Philips Elec. N. Am. Corp., 2010 WL 1609899, at *1 (D. Del. Apr. 20, 2010)).  Similar to a
15(a)(2) motion, "leave to file a supplemental complaint [pursuant to Rule 15(d)] should be
freely permitted in the absence of undue delay, bad faith, dilatory tactics, undue prejudice to
defendants, or futility, and when the supplemental facts are connected to the original pleading."
Tormasi, 2010 WL 1878961, at * 2.

1.      Statute of Limitations

Before reaching a discussion of each claim, the Court will consider the applicable statute

of limitations and its effect on each claim.  The statute of limitations for each of the four

proposed causes of action is two years.[14]  For each of the claims, accrual occurs "when a plaintiff

has a complete and present cause of action, that is, when the plaintiff can file suit and obtain

relief."  Dique v. N.J. State Police, 603 F.3d 181, 185 (3d Cir. 2010) (quoting Wallace v. Kato,

549 U.S. 384, 388 (2007)) (internal quotations omitted).  Therefore, the statute of limitations

begins to run from the commission of each act causing injury and, with respect to the conspiracy

claims, at least one overt act in furtherance of the conspiracy must have occurred within the two-

year period prior to the filing of the complaint.  See Kost v. Kozakiewicz, 1 F.3d 176, 191 (3d

Cir. 1993).

Tolling of a statute of limitations is generally controlled by state law, unless state law

conflicts with federal law.  Dique, 603 F.3d at 185.  Except in limited circumstances,

Pennsylvania law does not permit judicial extension of the statute of limitations.  See 42 Pa.

Cons. Stat. § 5504.  In many instances, federal law incorporates the state statute of limitations

and allows for equitable tolling when a plaintiff diligently pursues his or her rights and

"extraordinary circumstances" occur that prevent a party from filing a claim within the period of

---

[14]  See Wilson v. Bd. of Control of City of Harrisburg Sch. Dist., No. 10-353, 2010 WL
4977056, at *5 (M.D. Pa. Dec. 2, 2010) ("[A] § 1983 conspiracy claim is subject to a two-year
limitations period."); Stockley v. Darby Borough, No. 10-688, 2010 WL 4054183, at *4 (E.D.
Pa. Oct. 14, 2010) (a § 1985(2) claim is subject to a two-year statute of limitations in
Pennsylvania); Brock v. Thomas, No. 10-687, 2011 WL 1709858, at *5 (E.D. Pa. Apr. 14, 2011)
(a civil conspiracy claim under Pennsylvania law has a two-year limitation that begins to run on
the date of injury); MFS, Inc. v. DiLazaro, No. 08-2508, 2009 WL 3081569, at *8-9 (E.D. Pa.
Sept. 25, 2009) (the statute of limitations for a First Amendment retaliation claim is two years).

limitations.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).  (See also Doc. No. 157 at 13.)

Moreover, in some circumstances, federal law permits a tolling of the statute of limitations where

there has been a "continuing violation."  O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir.

2006).

Here, Plaintiff Timoney filed the Motion for Leave to File a Supplemental Pleading on

June 18, 2010.  It follows that, in accordance with the two-year statute of limitations, acts

causing injury between June 18, 2008 and June 18, 2010 are actionable on the four new claims.

Although acts causing injury which occurred prior to June 18, 2008 may have evidentiary value,

they would be untimely as a basis for establishing a claim, unless equitable tolling or the

continuing violation doctrine applies.  As discussed below, the Court will decline to apply either

doctrine.

The Third Circuit has addressed the continuing violation doctrine in O'Connor.  In

O'Connor, with minor exceptions, all of the events described in the plaintiff's complaint

occurred outside of the two-year limitations period. 440 F.3d 125, 127.  The plaintiff argued that

the statute of limitations was tolled because his complaint alleged that over a period of time he

worked in a hostile environment, which involved a "continuing violation."  Id.  The Third Circuit

resolved the statute of limitations issue by relying on Nat'l R.R. Passenger Corp. v. Morgan, 536

U.S. 101 (2002).  In Morgan, the Supreme Court established a bright line distinction between

discrete acts that are individually actionable and acts that are not individually actionable but may

be aggregated to make out a hostile work environment claim.  Morgan, 536 U.S. at 113.  The

difference between a discrete act and a non-discrete act, according to O'Connor and Morgan, is

that discrete acts are "easy to identify."  The Supreme Court held in Morgan that non-discrete

acts necessarily "occur[] over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Morgan, 536 U.S. at 115. The term "non-discrete acts" has been interpreted by at least one district court in this Circuit to mean activity taking place "behind the scenes," such as internal memoranda, e-mails, or letters suggesting a pattern of unlawful conduct. See Hayes v. Del. State Univ., 726 F. Supp. 2d 441, 455 (D. Del. 2010).

"Discrete acts" must be raised within the applicable statute of limitations or they will not support a lawsuit. Id. "Non-discrete acts" can occur at any time so long as they are linked in a pattern of actions that continue into the limitations period. Under these circumstances, behavior occurring outside the statute of limitations is permissible for purposes of assessing liability, but only if the behavior is linked with actions occurring within the statute of limitations period. Discrete acts, however, cannot be aggregated into a continuing liability theory. See MFS, Inc. v. DiLazaro, No. 08-2508, 2009 WL 3081569 (E.D. Pa. Sept. 25, 2009). The continuing violation doctrine as described in Morgan applies beyond the Title VII context and is applicable to a § 1983 claim.[15]  O'Connor, 440 F.3d at 128.

Here, Plaintiff Timoney's proposed Supplemental Complaint alleges what can only be categorized as discrete acts beginning in early 2004, after the Supreme Court of Pennsylvania held on December 13, 2003 that the ZHB improperly applied spot zoning to the Property, and continuing to May 2010, before he filed the Motion to File a Supplemental Pleading on June 18, 2010. (Doc. No. 115.) As noted above, discrete acts that occurred prior to June 18, 2008, or

---

[15]  In O'Connor, the Third Circuit also made clear that the continuing violation doctrine was not applicable to a claim for First Amendment retaliation. 440 F.3d at 127-28.

beyond the two-year limitations period from the filing of the Motion to Supplement the Amended

Complaint, do not toll the statute of limitations.   Moreover, discrete acts cannot be aggregated to

form a continuing violation.   No facts alleged in the pleadings show a series of non-discrete acts

that would merit applying the continuing violation doctrine and it will not be applied here.[16]

Further, Plaintiff Timoney has not established any circumstances that warrant equitable

tolling of the statute of limitations.   Equitable tolling is permissible "(1) where the defendant has

actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in

some extraordinary way has been prevented from asserting his or her rights; or (3) where the

plaintiff has timely asserted his or her rights mistakenly in the wrong forum."   Oshiver v. Levin,

Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994).   Extraordinary circumstances

may include a court error or mental illness, although even these circumstances are not *per se*

reasons to toll the statute of limitations.   See Cramer v. Sec'y Pa. Dep't of Corr., No. 07-2782,

2011 U.S. App. LEXIS 8196, at *7-8 (3d Cir. Apr. 21, 2011); Zied v. Barnhart, No. 10-3413,

2011 U.S. App. LEXIS 5416, at *13 (3d Cir. Mar. 17, 2011) (non-precedential opinion).

Plaintiff Timoney has not provided facts or arguments warranting the application of the equitable

---

[16]   The acts relied upon by Plaintiff Timoney prior to June 18, 2008 are that Realen, Kaplin and/or Township Defendants entered into an agreement starting in January 2004 that Township Defendants approval of Plan C would be the *quid pro quo* for Kaplin and Realen to cause dismissal of Plaintiff Timoney's action against Township Defendants; agreed and acted prior to September 3, 2004 to "put the brakes" on the instant federal action; and agreed and acted on May 5, 2005, April 20, 2006, September 29, 2006, November 10, 2006, and November 27, 2006, to improperly attempt to cause dismissal of the instant federal case by Plaintiff Timoney even though a similar matter was under consideration in the Declaratory Judgment Action pending in state court.  (Doc. No. 115, Ex. A ¶ 94(a)-(e).)  These acts may have evidentiary value and would be admissible at a trial had Plaintiff Timoney established viable claims within the statute of limitations.  However, the acts alleged to have occurred within the limitations period do not establish viable claims for reasons set forth in this Opinion.

tolling doctrine in this case.

Because the equitable tolling and continuing violation doctrines do not apply, the Court

will only consider discrete acts that occurred between June 18, 2008 and June 18, 2010 in

deciding the Motion to Supplement the Complaint.  The acts alleged to have occurred within the

two-year statute of limitations are as follows:

> Realen, the Realen conspirators, Kaplin, the Northwestern conspirators
> and/or the Township [Defendants], and/or others acting in concert with them,
> *inter alia*:[17]
>
>> (f) Agreed and acted to cause Kaplin to refuse to be
>> discharged as counsel and to refuse to withdraw as
>> counsel for Receiver Timoney and Hankin until April
>> 5, 2010;
>>
>> (g) Agreed and acted on April 21, 2010 to cause
>> Realen to withdraw its Motion to Voluntarily Dismiss
>> itself from this case that it had filed on November 27,
>> 2006 and to continue as a party in this action without
>> any claims solely to prejudice Receiver Timoney and
>> Hankin, and to obstruct justice;
>>
>> (h) Agreed and acted on April 28, 2010 to cause
>> Realen to threaten and harass Receiver Timoney and
>> Hankin, including threats to "all persons holding any
>> beneficial or legal interest in the partnership;"

---

[17]  Plaintiff Timoney alleges that entities, other than Realen and Township Defendants,
are part of the conspiracy.  Plaintiffs refer to an entity noted as "Northwestern."  This entity is
Northwestern Mutual Life Insurance Company.  Realen is a Pennsylvania General Partnership
whose partners are Realen Golf Communities, L.P. and the Northwestern Mutual Life Insurance
Company.  (Doc. No. 120, App. Tab. 11.)  Township Defendants argue that other entities are
"required parties" and must be joined as defendants pursuant to Federal Rule of Civil Procedure
19(a)(1).  The Court disagrees.  The absence of the additional entities does not hinder any current
party from obtaining complete relief.  Township Defendants and Realen's defenses are not
jeopardized by the absence of the entities.  The entities have not expressed any concern about
their absence from the litigation and there is no evidence that they will be prejudiced.  See Sindia
Expedition, Inc. v. Wrecked & Abandoned Vessel, 895 F.2d 116, 121-23 (3d Cir. 1990) (citing
3A Moore's Fed. Practice ¶ 19.07-1[1], at 93-98 (2d ed. 1989)).

(i) Agreed and acted on April 28, 2010 to cause
Realen to threaten to pursue indemnification or a
separate cross-claim and attorneys fees against
Receiver Timoney and Hankin in this action, even
though Hankin is not even a party;

(j) Agreed and acted on May 25, 2010 to cause Kaplin
and Realen to threaten Receiver Timoney and Hankin
that Kaplin and Realen will commence lawsuits
against Receiver Timoney and Hankin and every
person who has any legal or equitable interest,
however, [sic] derived, in Hankin or proceeds from its
dissolution;

(k) Agreed and acted on May 25, 2010 to cause
Kaplin and Realen to further threaten witnesses in this
action in an effort to intimidate them and to prevent or
prejudice their testimony and obstruct justice;

(l) Agreed and acted to continue to unlawfully
interfere with Receiver Timoney's [sic] and Hankin's
pursuit of their claims against the Township from
early 2004 to the present . . . .

(Doc. No. 115, Ex. A ¶ 94(f)-(l).)  In addition to these discrete actions, Plaintiff Timoney

makes two general assertions against Realen and Township Defendants that do not contain a

time limitation.  They will be presumed to have occurred within the two-year period.  They are

as follows:

(a) Agreed and acted to deprive Plaintiff receiver
Timoney and Hankin of the fair market value of the
Hankin Property and just compensation;

(b) Agreed and acted to deprive Plaintiff Receiver
Timoney and Hankin of due process, and first
amendment rights to proceed in this action, which are
guaranteed by the United States Constitution and by
federal law.

26

(Id. ¶ 94(a)-(b).)

Only these acts will be considered by the Court because they occurred within the two-year statute of limitations.  Accordingly, the sustainability of the four new claims asserted against Township Defendants and Realen will be evaluated based upon their conduct within this two-year period.

2.     Civil Rights Conspiracy in Count VII and Civil Conspiracy Under Pennsylvania Law in Count IX are Futile

Plaintiff Timoney alleges that Township Defendants, Realen, and others engaged in a civil rights conspiracy in violation of § 1983 (Count VII) and a civil conspiracy in violation of Pennsylvania law (Count IX).  Because Plaintiff Timoney has litigated nearly identical claims against Realen in state court, both of these conspiracy claims are barred by the doctrine of res judicata.  Therefore, raising these claims once again in this case against Realen would be futile.

Moreover, Plaintiff Timoney has failed to allege sufficient facts against Township Defendants to support his claim of a § 1983 civil rights conspiracy and a civil conspiracy in violation of Pennsylvania law.  In addition, Township Defendants are immune from a civil conspiracy claim under the Pennsylvania Political Subdivision Tort Claims Act.  For these reasons, these claims also would be futile against Township Defendants.  Accordingly, Plaintiff Timoney will not be permitted to supplement the Complaint by adding Counts VII and IX.

a.     Conspiracy Claims Against Realen

i.     Civil Conspiracy Under Pennsylvania Law Against Realen

In the Rescission Action in the Montgomery County Court of Common Pleas, Plaintiff Timoney alleged a civil conspiracy in violation of Pennsylvania law against Realen.  (Doc. No.

27

120, App. Tab 5 ¶¶ 24-26.)  Specifically, Plaintiff Timoney alleged that Realen conspired with

Kaplin to undermine the instant civil rights case and Plaintiff Timoney's right to receive the

Additional Purchase Price.  To support these charges, Plaintiff Timoney alleged that, in

furtherance of the conspiracy, Realen and Kaplin engaged in a "scheme" to fraudulently induce

Plaintiff Timoney to enter into the 2003 Purchase Agreement and Joint Representation

Agreement, conspired to convince Plaintiff Timoney to sell the Property to Realen, and agreed

to "abusively" sue Plaintiff Timoney.[18]  (Doc. No. 120, App. Tab 5 ¶¶ 136-46.)  On January 28,

2008, Judge Drayer dismissed the civil conspiracy claim.  Plaintiff Timoney then made

identical allegations against Realen in a counterclaim and a third-party complaint, each filed in

the Declaratory Judgment Action in Montgomery County Court of Common Pleas and each

---

[18]  Plaintiff Timoney alleged:

Defendants [Realen] conspired, combined or agreed, with each other and with Kaplin, to engage in the fraudulent, tortious and otherwise illegal misconduct alleged herein, including but not limited to: scheming to sellout Plaintiffs' $135 million dollar claims against Upper Merion Township in exchange for Upper Merion Township's agreement to approve a higher density development for [Realen], with no monetary compensation to Plaintiffs; inducing Plaintiffs to sign and agree to the 2003 Purchase Agreement and the 2003 Amended Joint Representation Agreement; inducing them to transfer title in the Property to [Realen]; refusing to pay the $45 million dollar Additional Purchase Price to them; suing them; converting Plaintiffs' property interests for their own benefit; failing to timely obtain the "Final Approvals" and failing to comply with the schedule for prosecution of the permits and approvals necessary to calculate the Additional Purchase Price; failing to complete the Closing after obtaining the Purchaser's Approvals; refusing to recognize Plaintiffs' discharge of Kaplin as their counsel in their litigation against Upper Merion Township; compromising and prejudicing Plaintiffs' claims in their litigation against Upper Merion Township; scheming to defraud Plaintiffs; and acting in bad faith.

(Doc. No. 120, App. Tab 5 ¶ 137.)

was dismissed by Judge Drayer on September 18, 2008.[19]

Pursuant to the Full Faith and Credit Statute, 28 U.S.C. § 1738, "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . ." R & J Holding Co. v. Redevelopment Auth. of the County of Montgomery, No. 10-1047, 2011 WL 6117857, at *4 (3d Cir. Dec. 9, 2011) (precedential opinion). Section 1738 "has long been understood to encompass the doctrines of res judicata, or 'claim preclusion,' and collateral estoppel, or 'issue preclusion.'" Id. (quoting San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323, 336 (2005)). The doctrine of res judicata requires that federal courts "give state court judgments the same preclusive effect that the issuing state courts would give them," and thus requires a federal court to apply the state court's law of preclusion. Moncrief v. Chase Manhattan Mortg. Corp., 275 F. App'x 149, 153 (3d Cir. 2008). The Third Circuit uses the term res judicata to encompass the concepts of both claim preclusion and issue preclusion. See United States v. 5 Unlabeled Boxes, 572 F.3d 169, 173-74 (3d Cir. 2009) (citing Venuto v. Witco Corp., 117 F.3d

---

[19] In the counterclaim, Plaintiff Timoney alleged that "unbeknownst to Receiver Timoney and Hankin, Realen, Kaplin and others conspired to defraud, prejudice and harm Receiver Timoney and Hankin" (Doc. No. 120, App. Tab 6 at 23); "Realen and Kaplin never intended for Realen to pay Receiver Timoney and Hankin the Additional Purchase Price" (Id.); and "Realen and Kaplin had agreed and conspired to defraud Receiver Timoney and Hankin and to engage in the misconduct set forth below" (Id.). In the third-party complaint, Plaintiff Timoney alleged that "unbeknownst to Receiver Timoney and Hankin, Realen . . . never intended to fully pay Receiver Timoney and Hankin the Additional Purchase Price, and had even anticipated suing Receiver Timoney and Hankin to avoid payment of the Additional Purchase Price, and conspired with Kaplin to harm Receiver Timoney and Hankin and to engage in the misconduct set forth below." (Doc. No. 120, App. Tab 7 ¶ 18.) Similar to the counterclaim, the "misconduct set forth below" details acts taken by Realen and alleged co-conspirators to withhold the Additional Purchase Price from Plaintiff Timoney, and to develop the Property to their financial advantage and to the detriment of Plaintiff Timoney.

754, 758 n.5 (3d Cir. 1997)) ("'[T]he preferred usage' of the term res judicata 'encompasses both claim and issue preclusion.'"); Bierley v. Dombrowski, 309 F. App'x 594, 595 (3d Cir. 2010).

Here, Realen argues that res judicata, in the form of claim preclusion, bars Plaintiff Timoney's proposed claim of civil conspiracy in violation of Pennsylvania law (Count IX).[20] Under Pennsylvania law, claim preclusion turns on whether the underlying events giving rise to the legal claims asserted are essentially similar. Turner v. Crawford Square Apts. III, L.P., 449 F.3d 542, 549 (3d Cir. 2006). See also McArdle v. Tronetti, 627 A.2d 1219 (Pa. Super. Ct. 1993); In re Jones & Laughlin Steel Corp., 477 A.2d 527 (Pa. Super. Ct. 1984). Pennsylvania courts have recognized that in determining whether a single claim or cause of action is present, the court may consider "the identity of the acts complained of, the demand for recovery, the identity of the witnesses, documents, and facts alleged." Turner, 449 F.3d at 549. Further, Pennsylvania law provides that in order for claim preclusion to apply, the claims must share four conditions:

(1)   The thing sued upon or for;
(2)   The cause of action;
(3)   The persons and parties to the action; and
(4)   The capacity of the parties to sue or be sued.

Turner, 449 F.3d at 548.

Realen avers correctly that all four elements are satisfied here and for this reason the civil conspiracy claim will be dismissed. The thing sued upon here — conspiracy to harm Plaintiff Timoney's fiscal position with regard to the Property — is identical to that sued upon

---

[20]   Realen also asserts that Count VII, conspiracy in violation of 42 U.S.C. § 1983, is barred by res judicata. This argument is discussed below.

30

in the Declaratory Judgment and Rescission actions in state court.[21]   The causes of action are identical because in this case and in both state cases Plaintiff Timoney alleged a civil conspiracy in violation of Pennsylvania law.   The persons and parties are identical because Plaintiff Timoney and Realen were parties to each case.   Finally, the capacity of the parties to sue or be sued is identical as well.

Further, the underlying events giving rise to the legal claims in the pertinent state court actions and in the instant case are identical.   In both the Declaratory Judgment Action and the Rescission Action, Plaintiff Timoney alleged a civil conspiracy claim against Realen.   The allegations in the proposed Supplemental Complaint regarding a civil conspiracy are nearly identical.   (See Doc. No. 115, Ex. A ¶¶ 17-69.)   Notably, the only significant difference between the proposed Supplemental Complaint and the allegations made in the state cases involves acts in furtherance of a conspiracy that are alleged to have occurred after the filing of the three state court cases.   They concern a Rule 26 disclosure on April 28, 2010, and the May 25, 2010 Letter, both of which do not overcome the fact that Plaintiff Timoney has already brought, and the state court has already dismissed, the identical claim.[22]

Accordingly, the four conditions that must be satisfied for claim preclusion to apply are present here.   Claim preclusion therefore renders Plaintiff Timoney's civil conspiracy claim futile and it will not be added to the Amended Complaint.

---

[21]   The state cases alleging claims corresponding to the claims asserted in the instant action are the Declaratory Judgment Action and the Rescission Action, discussed above at sections II.A.3.c-d.

[22]   The April 28, 2010 disclosure and May 25, 2010 Letter are discussed below.   They do not support allowing the additional causes of action to be brought here.

ii.     Civil Rights Conspiracy Against Realen

Although Plaintiff Timoney did not bring a § 1983 conspiracy claim against Realen in state court, the preclusive effect of res judicata is the same for this cause of action as well.  Res judicata bars claims that were asserted in a prior suit, as well as claims arising out of the same cause of action that could have been asserted but were not.  Fatiregun v. City of Philadelphia, No. 09-601, 2009 WL 3172766, at *3 (E.D. Pa. Oct. 2, 2009) (citing Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)).  The Third Circuit has not precisely defined "cause of action" and courts in this Circuit are therefore predisposed toward a broad view of what constitutes identity of causes of action.  Id. (citing United States v. Athlone Indus., Inc., 746 F.2d 977, 984 (3d Cir. 1984)).  "That broad view focuses on the central objective of res judicata to require plaintiffs 'to present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.'"  Id.

To determine whether two suits involve the same cause of action, the Court should consider whether there is an "essential similarity of the underlying events" giving rise to the claim.  Fatiregun v. City of Philadelphia, 2009 WL 3172766, at *3 (citing Bd. of Trs. of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra, 983 F.2d 495, 504 (3d Cir. 1992)); Athlone, 746 F.2d at 984.  In Athlone, the Third Circuit noted several factors that indicate "'an essential similarity of the underlying events,' including: (1) whether the acts complained of and the demand for relief are the same; (2) whether the theory of recovery is the same; (2) whether the witnesses and documents necessary at trial are the same; and (4) whether the material facts alleged are the same."  746 F.2d at 984.

The underlying events giving rise to Plaintiff Timoney's Complaint in the Rescission

32

Action, and the counterclaim and third-party complaint filed in the Declaratory Judgment

Action, are similar or the same as those events giving rise to Plaintiff Timoney's proposed

§ 1983 claim against Realen in the instant litigation.  Four pleadings (the Rescission Action

complaint, Declaratory Action counterclaim and third-party complaint, and the instant

proposed Supplemental Complaint) raise claims that are based on the same alleged wrongdoing

by Realen in conspiring to financially harm Plaintiff Timoney over the Property.  Moreover, the

claims are each based on the same underlying events.  Each of the four pleadings allege that

Realen participated in secret settlement discussions to harm Plaintiff Timoney's rights under

the Joint Prosecution and 2003 Purchase Agreements.  (Doc. No. 120 at 15-16.)  Each allege a

plan to dismiss the instant action as a means of unlawfully preventing Plaintiff Timoney from

receiving proper payment after the Property was sold.  (Id. at 16.)  Each alleges violations of

the 2003 Purchase Agreement and Joint Prosecution Agreement and claims that Realen's goal

was to "cheat" Plaintiff Timoney out of the Additional Purchase Price under the terms of the

2003 Purchase Agreement.  (Id.)  All of these facts have been considered in state court and

each of the claims have been fully adjudicated.  See Timoney v. Realen et al., No. 07-6106,

Montgomery County Court of Common Pleas (Jan. 28, 2008); Realen v. Timoney et al., No.

05-9127, Montgomery County Court of Common Pleas (Sept. 18, 2008); Realen v. Timoney,

No. 05-9127, Montgomery County Court of Common Pleas (Sept. 18, 2008).  Accordingly,

since the facts underlying the § 1983 conspiracy claim were asserted in state court and could

have been asserted there in the form of a § 1983 claim, res judicata bars Plaintiff Timoney from

bringing a § 1983 conspiracy claim against Realen in this case.

33

b.      Conspiracy Claims Against Township Defendants

i.      Civil Conspiracy Under Pennsylvania Law Against
Township Defendants

To pursue a claim for civil conspiracy under Pennsylvania law, Plaintiff Timoney must "allege the existence of all elements necessary to such cause of action." Rutherford v. Presbyterian Univ. Hosp., 612 A.2d 500, 508 (Pa. Super. Ct. 1992).  To establish civil conspiracy under Pennsylvania law, it "'must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means.' Proof of malice, i.e., an intent to injure, is an essential part of a conspiracy cause of action; this unlawful intent must also be without justification." Id. at 508 (quoting Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979)).  "Furthermore, conspiracy is not actionable until 'some overt act is done in pursuance of the common purpose or design . . . and actual legal damage results.'" Id. (quoting Baker v. Rangos, 324 A.2d 498, 506 (Pa. 1974)).

Here, considering the allegations within the two-year statute of limitations, Plaintiff Timoney has made only conclusory allegations against Township Defendants.  The allegations are that Township Defendants "agreed and acted" to cause Realen and Kaplin to engage in conspiratorial acts.  Plaintiff Timoney does not allege any plausible, specific acts taken by Township Defendants in furtherance of the conspiracy within the limitations period.  In fact, the only timely acts alleged with any certainty are that counsel for Realen sent a letter to Plaintiff Timoney on May 25, 2010 and made the Rule 26 disclosure on April 28, 2010.  That Township Defendants had anything to do with the letter or disclosure is mere conjecture and is insufficient to support a claim against Township Defendants.

Finally, Plaintiff Timoney is barred from pursuing the state civil conspiracy claim against Township Defendants because the Pennsylvania Political Subdivision Tort Claims Act (PPSTCA), 42 Pa. Cons. Stat. § 8541 *et seq.*, immunizes Pennsylvania municipalities against tort claims.  Section 8541 states: "No local agency shall be liable for any damages on account of any injury to any person or property caused by any act of the local agency or an employee thereof, or any other person."  A "local agency" is "[a] government unit other than the Commonwealth government."  42 Pa. Cons. Stat. § 8501.  Township Defendants fall within the definition of "local agency" and are immune from suit.  See Pahle v. Colebrookdale Twp., 227 F. Supp. 2d 361, 367 (E.D. Pa. 2002) (stating that "[b]oth the police department and the Township are political subdivisions and local agencies").  While § 8542(b) of the PPSTCA lists various exceptions to the grant of immunity, civil conspiracy as alleged in Count IX is not one of them.  See Schlichter v. Limerick Twp., No. 04-4229, 2005 U.S. Dist. LEXIS 7287, at *34 (E.D. Pa. Apr. 26, 2005).

> ii.     Civil Rights Conspiracy Against Township Defendants

To establish a § 1983 conspiracy claim, Plaintiff Timoney "must allege facts that plausibly show:  (1) the existence of a conspiracy and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."  Jackson-Gilmore v. Dixon, No. 04-03759, 2005 U.S. Dist. LEXIS 28844, at *41 (E.D. Pa. Nov. 17, 2005).  To support this showing, Plaintiff Timoney must allege plausible facts and not conclusory assertions.  This should include "(1) the period of the conspiracy; (2) the object of the conspiracy; and (3) certain actions of the alleged conspirators taken to achieve that purpose."  Goodwin v. Moyer, No. 05-781, 2006 U.S. Dist. LEXIS 18492, at *4 (M.D. Pa. Mar. 2, 2006).  Further, Plaintiff

Timoney must make "specific allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." Hammond v. Creative Fin. Planning, 800 F. Supp. 1244, 1248 (E.D. Pa. 1992).

Here, similar to the failure to allege any facts showing participation of Township Defendants in a civil conspiracy within the two-year statute of limitations, the facts alleged against Township Defendants are insufficient to establish a claim of conspiracy to violate § 1983. Again, Plaintiff Timoney relies upon alleged conspiratorial acts undertaken by Realen and Kaplin, who is not a defendant in this matter, and makes only conclusory assertions that Township Defendants "agreed and acted" to conspire against Plaintiff Timoney.

Therefore, the claim that Township Defendants participated in a § 1983 conspiracy within the two-year statute of limitations is futile and the Amended Complaint will not be supplemented to include this claim.

3.    Conspiracy to Intimidate Witnesses in Count VIII is Futile

Plaintiff Timoney seeks to assert a conspiracy claim against Realen and Township Defendants under 42 U.S.C. § 1985(2). Section 1985(2) provides, in relevant part, that an action for damages can be brought:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified.

42 U.S.C. § 1985(2). The elements of a § 1985(2) violation include: (1) a conspiracy, (2) to deter testimony by force or intimidation, and (3) injury to the plaintiff. See Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co., 792 F.2d 341, 356 (3d Cir. 1986); Brever v. Rockwell

Int'l Corp., 40 F.3d 1119 (10th Cir. 1994).  For reasons discussed below, Plaintiff Timoney has

not alleged facts that plausibly show such misconduct by Realen and Township Defendants.

See Iqbal, 129 S. Ct. 1937, 1950 (2009).  The § 1985(2) claim is therefore futile and the

Motion to assert it in a supplemental pleading will be denied.

a.      Witness Intimidation Claim Against Realen

Plaintiff Timoney has not set out a sufficient claim of witness intimidation against

Realen.  Three factual allegations in the proposed Supplemental Complaint relate to witness

intimidation.[23]  They fail to show that Plaintiff Timoney has been hampered in any way in the

prosecution of his claims in this case.  Moreover, the May 25, 2010 Letter sent by Kaplin to

Plaintiff Timoney is not actionable as a matter of law.

With regard to the May 25, 2010 Letter, Plaintiff Timoney alleges a conspiracy

between Realen and its former counsel, Kaplin — arguing that Kaplin and Realen conspired to

threaten and intimidate witness John VanLuvanee and Hankin family members from testifying

in this case.  On that date, Kaplin sent a letter to Plaintiff Timoney on behalf of Realen,

copying attorney John VanLuvanee.  Kaplin "demanded [Plaintiff Timoney's] cooperation in

connection with" dismissing the instant federal action.  Kaplin also requested that Plaintiff

Timoney cease "pressing forward" with the instant federal action because it was threatening

Realen's ability to develop Phase Two of the project.  If Plaintiff Timoney continued to pursue

the instant federal litigation, then "Realen [would] be required to commence suit against the

---

[23]  Those factual allegations are:  (1) on April 21, 2010 Realen withdrew its Motion to
Dismiss the instant action (Doc. No. 107); (2) on April 28, 2010, Realen made a Rule 26
disclosure that included "threats" to pursue litigation against the Hankins; and (3) on May 25,
2010, Realen's counsel, Kaplin, sent a cease and desist letter to Plaintiff Timoney, threatening
litigation against Plaintiff Timoney and Hankin family members.

37

Hankin Family Partnership and every person who has any legal or equitable interest, however derived, in the partnership, or proceeds from its dissolution, for *inter alia*, breach of the AJPA, restraint of further violations and to recover its monetary losses."  (Doc. No. 120, App. Tab 4.) When Kaplin sent the letter, he was acting as counsel on behalf of Realen and "[n]o conspiracy can exist where an attorney's advice or advocacy is for the benefit of his client rather than for the attorney's sole personal benefit."[24]  Heffernan v. Hunter, 189 F.3d 405, 411 (3d Cir. 1999) (quotations omitted).

Further, Plaintiff Timoney fails to allege facts that plausibly show an injury, the third element of a § 1985(2) conspiracy claim.  Although a plaintiff is not required to show that a witness was actually deterred from testifying to establish an injury, Brever, 437 F.3d at 1128, a plaintiff must still plausibly allege that it was in some way injured by a defendants' conspiracy to intimidate, Malley-Duff, 792 F.2d at 356.  Here, Plaintiff Timoney fails to do so.  He alleges three timely acts by Realen, but fails to show how these acts caused an injury.  As noted above,

---

[24] In all likelihood, the May 25, 2010 Letter is not actionable because it involves protected conduct under the Petition Clause of the First Amendment to the U.S. Constitution and under the Noerr-Pennington doctrine.  See Mine Workers v. Pennington, 381 U.S. 657 (1965); Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961).  The Petition Clause protects "the right of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend. I.  The Noerr-Pennington doctrine provides that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct."  Sosa v. DirecTV Inc., 437 F.3d 923, 929 (9th Cir. 2006). See also WE, Inc. v. City of Philadelphia, 174 F.3d 322, 327 (3d Cir. 1999) (finding that the Noerr-Pennington doctrine applies in areas other than antitrust matters to protect a citizen's right to petition and that such protection is necessary so as not to chill the exercise of that right).  The doctrine also apparently applies to conduct in conjunction with a lawsuit, although the Third Circuit has not addressed this matter.  The Ninth Circuit has considered this doctrine at length and concluded that Noerr-Pennington applies broadly to all federal statutes, and that "conduct incidental to the prosecution of the suit," such as an attorney's demand letter, is protected by the doctrine.  437 F.3d at 931-35.

the three acts are:  (1) on April 21, 2010 Realen withdrew its motion to dismiss the instant

action (Doc. No. 107); (2) on April 28, 2010, Realen made a Rule 26 disclosure that included

"threats" to pursue litigation against the Hankins; and (3) on May 25, 2010, Realen's counsel,

Kaplin, sent a cease and desist letter to Plaintiff Timoney.  No factual allegation is made that

any of these acts caused Plaintiff Timoney not to pursue in some way the prosecution of this

matter against Township Defendants or intimidated any of its witnesses.[25]  In fact, these alleged

acts have spawned new, vigorous litigation by Plaintiff Timoney with the instant Motion for

Leave to Amend.  Moreover, as noted previously, no conspiracy arises from an attorney's

advocacy for the benefit of his client.

> b.     Witness Intimidation Claim Against Township Defendants

Plaintiff Timoney also seeks to charge Township Defendants with conspiring with

Realen and Realen's former counsel, Kaplin,[26] to intimidate the same persons from appearing

as witnesses in this case.  This claim may not be sustained for several reasons.

As a threshold matter, in light of the statute of limitations analysis, see *supra* section

IV.A.1, Plaintiff Timoney again asserts the same three timely acts in support of this claim:  (1)

on April 21, 2010, Township Defendants joined in Realen's withdrawal of its Motion to

Dismiss the instant action (Doc. No. 107); (2) on April 28, 2010, Realen's Rule 26 disclosures

included "threats" to pursue litigation against the Hankins; and (3) on May 25, 2010, Realen's

---

[25]  As noted above, Mr. Timoney is deceased.  There are no allegations to show that his successor, Mr. Weinreich, was intimidated by any of the acts of Realen or Kaplin.  The reference to Plaintiff Timoney in the intimidation claims also covers Mr. Weinreich.

[26]  Although the docket reflects that on April 5, 2010 Kaplin withdrew his appearance as counsel for Realen, Marc Kaplin, Esquire, continued to represent Realen and sent the May 25, 2010 Letter in that capacity.

counsel, Kaplin, sent a cease and desist letter to Plaintiff Timoney.

Regarding the April 21, 2010 activity, Plaintiff Timoney fails to allege any facts to show how Township Defendants' joining in Realen's Motion to dismiss the instant case deters testimony by force or intimidation.  Plaintiff Timoney only makes a conclusory assertion that the reason Township Defendants agreed to join in the Motion allowing Realen to remain in the litigation was to prejudice and harm Plaintiff Timoney.  (Doc. No. 157 at 4-5.)  This assertion is too vague to raise any inference of witness intimidation and therefore is not actionable to establish a claim in violation of § 1985(2).  Moreover, the April 28, 2010 Rule 26 disclosure involves an act by Realen and the May 25, 2010 Letter involves an act by Kaplin on behalf of Realen.  They do not involve Township Defendants and are not sufficient to support the § 1985(2) claim made against them.

### 4. First Amendment Retaliation Claim in Count X is Futile

In Count X, Plaintiff Timoney alleges that the Township Defendants and Realen unlawfully retaliated against Plaintiff Timoney for exercising his First Amendment rights, namely, the right to petition a court in the sense of bringing and defending a lawsuit.  To succeed on a claim of retaliation, Plaintiff Timoney must show "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation."  Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282 (3d Cir. 2004).

Plaintiff Timoney alleges that he engaged in the right to petition protected by the First Amendment when he prosecuted and defended lawsuits in state courts of Pennsylvania and in this Court.  (Doc. No. 115, Ex. A ¶ 115.)  He addresses the second element involving

40

government retaliation and argues that Realen and Township Defendants, under color of state

law, responded by conspiring to deprive Plaintiff Timoney of just compensation or the fair

market value of the Property, and conspiring to obstruct justice.  (Id. ¶ 148.)  Moreover,

Plaintiff Timoney avers that the protected activity is what caused the retaliation.  (Id.)  In

evaluating this claim, the Court is constrained to consider only those acts alleged to have

occurred within the two-year statute of limitations.

      Regarding Township Defendants, Plaintiff Timoney has failed to plead sufficient facts

to establish a First Amendment retaliation claim.  As the Court has discussed *supra*, the facts

occurring within the limitations period relate only to actions taken by Realen and Kaplin as

counsel to Realen, and not to Township Defendants.  Plaintiff Timoney alleges in a conclusory

fashion that Township Defendants "agreed and acted" to cause Realen and Kaplin to take these

acts.  This allegation is speculative and is not sufficient to state a claim.  Ashcroft v. Iqbal, 129

S. Ct. 1937, 1949 (2009) ("[T]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss).

Plaintiff Timoney's Motion to bring this claim against Township Defendants will be denied.

      Plaintiff Timoney also fails to plausibly plead that Realen retaliated in violation of

Plaintiff Timoney's First Amendment rights.  To be actionable, the retaliatory conduct alleged

must adversely affect a plaintiff.  See Brennan v. Norton, 350 F.3d 399, 418-19 (3d Cir. 2003).

The determination of whether a plaintiff has been adversely affected "is a fact-intensive inquiry

focusing on the status of the speaker, the status of the retaliator, the relationship between the

speaker and the retaliator, and the nature of the retaliatory acts."  Id. at 419.  The Court must

determine whether "a person of ordinary firmness" would be deterred from exercising their

constitutional rights.  Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).

Here, similar to the claim of witness intimidation discussed above, Plaintiff Timoney has not plausibly shown he was adversely affected.  Since April and May 2010, when the retaliatory conduct is alleged to have occurred, Plaintiff Timoney has continued to vigorously litigate its claims.  For example, Plaintiff Timoney continued to defend itself in the Declaratory Judgment Action.  Moreover, on April 27, 2011, Plaintiff Timoney filed a petition for allowance of appeal in response to Judge Drayer's January 21, 2011 order that Plaintiff Timoney is not entitled to the Additional Purchase Price.  Timoney also continued to pursue the Rescission Action.  On February 22, 2011, Plaintiff Timoney filed a petition for allowance of appeal after Judge Drayer dismissed the breach of contract claim in the Rescission Action.[27] Further, neither Plaintiff Timoney nor his successor have shown any reticence to pursue this litigation.  Nor is there any firm allegation that persons targeted by the acts described above will not testify as trial witnesses.  In sum, no adverse action has been shown and the request to bring the First Amendment retaliation claim will be denied.

         5.      Undue Delay, Bad Faith, or Dilatory Motive

Under Federal Rule of Civil Procedure 15(a) and (d), a court may deny a motion for leave to file a supplemental claim if it would cause undue delay in the litigation or prejudice to the nonmoving party.  AT&T v. Marstan Indus. Inc., No. 93-2961, 1994 WL 276269, at *1 (E.D. Pa. June 21, 1994); Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989).  A court may also decline leave to file a supplemental claim in the face of evidence of  bad faith or dilatory

---

[27] Both of Plaintiff Timoney's petitions were denied by the Pennsylvania Supreme Court on September 20, 2011.

motive.  See AT&T, 1994 WL 276269, at * 1.

There is no evidence here that Plaintiff Timoney filed the instant Motion in bad faith or with undue delay or dilatory motive.  Plaintiff Timoney has been diligently litigating this case and there is no indication of an attempt to delay the matter.  Moreover, the Court has examined the claims of prejudice asserted by Township Defendants and finds them to be without merit. Despite this finding, because the Court has already found that the proposed additional claims would be futile, the Court will nonetheless deny the Motion.

## V.    CONCLUSION

Plaintiff Timoney has not plausibly alleged sufficient facts to support a cross-claim against Realen or to support additional claims against Township Defendants pursuant to Federal Rule of Civil Procedure 15(a) or (d).  Consequently, Plaintiff Timoney's Motion to File a Supplemental Complaint and Cross-Claim will be denied.

An appropriate Order follows.